UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

YARWIN RODRIGUEZ CARMONA,

        Petitioner,               Case No. 1:25-cv-1131

v.                                    Honorable Paul L. Maloney

KRISTI NOEM et al.,

        Respondents.
_____/

**OPINION**

Petitioner Yarwin Rodriguez Carmona initiated this action on September 22, 2025, by filing a counseled combined petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 and complaint for emergency injunctive relief. (§ 2241 Pet., ECF No. 1.) Petitioner is a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan.

Petitioner challenges the lawfulness of his current detention and asks the Court for the following relief: to accept jurisdiction over this action; to enter an order prohibiting Respondents from transferring Petitioner out of the Western District of Michigan during the pendency of these proceedings; to declare that Respondents' actions to detain Petitioner violate the Due Process Clause of the Fifth Amendment and the Immigration and Nationality Act; to issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to promptly schedule a bond hearing for Petitioner's removal proceedings; and, to award attorneys' fees and costs for this action. (§ 2241 Pet., ECF No. 1, PageID.16.)

In an order (ECF No. 3) entered on September 29, 2025, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted. Respondents filed their response (ECF No. 4) on September 30, 2025. Petitioner, through counsel, filed his reply (ECF No. 5) that same day. On October 14, 2025, Petitioner, through counsel, filed a motion for leave to file supplemental authority (ECF No. 6), which the Court will grant. For the following reasons, the Court will also grant Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## Discussion

### I. Factual Allegations

Petitioner is a native and citizen of Venezuela. (McClure Decl. ¶ 4, ECF No. 4-1, PageID.46.) On or about September 4, 2023, Petitioner, his spouse, and two children entered the United States "without being inspected and admitted or paroled by immigration officials." (*Id.*) On September 20, 2023, the United States Border Patrol (USBP) encountered Petitioner and his family and served them with Notices to Appear. (*Id.*) Petitioner was charged with inadmissibility pursuant to section 212(a)(6)(A)(i)(I) of the Immigration and Nationality Act (INA) because Petitioner was an "immigrant who was present in the United States without having been admitted or paroled, or who arrived at a time or place not designated by the Attorney General." (*Id.*) Petitioner was released on his own recognizance. (*Id.*, PageID.46–47.) The Notice to Appear was filed with the Executive Office for Immigration Review (EOIR), and Petitioner was scheduled to appear before the Memphis Immigration Court on September 17, 2026. (*Id.*)

On February 21, 2024, Petitioner filed a change of address with the Memphis Immigration Court, reflecting an address in Northfield, Illinois. (*Id.* ¶ 5.) On April 18, 2024, Petitioner filed a motion to change venue from the Memphis Immigration Court to the Chicago Immigration Court. (*Id.* ¶ 6.) That motion was granted that same day. (*Id.* ¶ 7.)

On September 14, 2025, ICE Enforcement and Removal Operations (ERO) encountered Petitioner in Chicago and arrested him under INA § 235 on the basis that Petitioner "is an applicant for admission to the United States seeking admission and he is not clearly and beyond doubt entitled to admission." (*Id.* ¶ 8.) That same day, Petitioner was transferred to North Lake. (*Id.* ¶ 9, PageID.48.) ICE ERO filed a change of address with the Chicago Immigration Court, and that court changed venue to the Detroit Immigration Court pursuant to EOIR policy. (*Id.*)

Petitioner represents that at the time he was taken into custody, he was playing basketball outside, and his application for asylum was pending before the Chicago Immigration Court, with a final hearing set for December of 2026. (§ 2241 Pet., ECF No. 1, PageID.2.) Petitioner was scheduled to appear before the Detroit Immigration Court for a master calendar hearing on October 8, 2025. (McClure Decl. ¶ 10, ECF No. 4-1, PageID.48.) Petitioner "has not requested a bond redetermination hearing before the Detroit Immigration Court." (*Id.* ¶ 11.)

**II.    Exhaustion**

Respondents contend that this Court should deny Petitioner's request for habeas corpus relief because Petitioner has not requested a bond redetermination hearing before the immigration court and, therefore, has not exhausted his administrative remedies. (ECF No. 4, PageID.25.) Respondents argue that should Petitioner request a bond hearing and receive an unfavorable decision, he would have the right to appeal that decision to the Board of Immigration Appeals (BIA). (*Id.*) Petitioner argues that exhaustion is not required for petitions brought pursuant to § 2241 and that, in any event, exhaustion should be excused, as requesting a bond redetermination would be futile. (ECF No. 5, PageID.67.)

Here, no applicable statute or rule mandates administrative exhaustion by Petitioner. Thus, whether to require exhaustion is within this Court's "sound judicial discretion." *See Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145

3

(1992)) (internal quotation marks omitted). This discretion is referred to as "prudential" exhaustion, *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 746 (6th Cir. 2019), and such a court-made exhaustion rule must comply with statutory schemes and Congressional intent, *Shearson*, 725 F.3d at 593–94. Notably, the United States Court of Appeals for the Sixth Circuit has not yet decided "whether courts should impose administrative exhaustion in the context of a noncitizen's habeas petition for unlawful mandatory detention." *See Pizzaro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *3 (E.D. Mich. Sept. 9, 2025) (citing *Hernandez v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1621, 2025 WL 2444114, at *8 (N.D. Ohio Aug. 25, 2025)). However, courts within the Sixth Circuit "have applied the three-factor test, set forth in *United States v. California Care Corp.*, 709 F.2d 1241 (9th Cir. 1983), to determine whether prudential exhaustion should be required." *See Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *4 (E.D. Mich. Aug. 29, 2025). Thus,

> courts may require prudential exhaustion when:
>
> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
>
> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
>
> (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Id.* (citing *Shweika v. Dep't of Homeland Sec.*, No. 1:06-cv-11781, 2015 WL 6541689, at *12 (E.D. Mich. Oct. 29, 2015)).

Upon consideration of those factors, this Court concludes that prudential exhaustion should not be required in Petitioner's case. First, the central question presented by Petitioner's § 2241 petition is whether 8 U.S.C. § 1225 or 8 U.S.C. § 1226 applies to Petitioner. That determination relies upon a purely legal question of statutory interpretation and does not require the record that

4

would be developed should the Court require Petitioner to exhaust his administrative remedies. Moreover, this Court is not bound by and is not required to give deference to any agency interpretation of a statute. *See Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 413 (2024) (noting that "courts need not and under the [Administrative Procedure Act (APA)] may not defer to an agency interpretation of the law simply because a statute is ambiguous.").

Second, Petitioner's constitutional challenge to his detention does not require exhaustion. The Sixth Circuit has noted that due process challenges, such as the one raised by Petitioner here, generally do not require exhaustion because the BIA cannot review constitutional challenges. *See Sterkaj v. Gonzalez*, 439 F.3d 273, 279 (6th Cir. 2006). Finally, it is doubtful that BIA review of Petitioner's custody would preclude the need for judicial review. The Court reaches that conclusion based upon the fact that the Government has clearly set forth its belief that § 1225(b)(1)(A) applies to all aliens who have resided within the United States prior to their arrest and detention. Notably, the BIA recently proclaimed that any individual who has ever entered the United States unlawfully and was later detained is no longer eligible for bond and is subject to mandatory detention under § 1225(b)(2)(A). *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 229 (2025). If Petitioner were to request a bond redetermination hearing before an immigration judge, that request would likely be denied given the BIA's recent decision in *Yajure Hurtado*. Moreover, it is simply unlikely that any administrative review by the BIA of that denial would lead to the Government changing its position and precluding judicial review of Petitioner's § 2241 petition. Accordingly, for the foregoing reasons, this Court concludes that prudential exhaustion is not required.

Alternatively, even in situations where a court may ordinarily apply prudential exhaustion, the court may still choose to waive exhaustion. *See Lopez-Campos*, 2025 WL 2496379, at *4. A

court may choose to rule upon the merits of the issues presented when the "legal question is fit for resolution and delay means hardship." *See Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000) (citation omitted). A court may also waive exhaustion if the "pursuit of administrative remedies would be a futile gesture." *Shearson*, 725 F.3d at 594 (citation omitted).

Here, there is no question that delay would result in hardship to Petitioner. First, as noted above, Petitioner would need to request a bond redetermination hearing before an immigration judge. There is no evidence in the record as to how long Petitioner would have to wait until such a hearing, if any, were scheduled. Petitioner's request would likely be denied given the BIA's recent decision in *Yajure Hurtado*. Then, Petitioner would have the opportunity to appeal any unfavorable decision to the BIA. Appeals of bond denials "typically take six months or more to be resolved at the BIA." *See Rodriguez v. Bostock*, 779 F. Supp. 3d 1239. 1245 (W.D. Wash. 2025).

Petitioner represents that when he was taken into custody, his final hearing on the merits of his asylum application had been set for December of 2026 before the Chicago Immigration Court. (§ 2241 Pet. ECF No. 1, PageID.2.) However, as set forth above, venue for Petitioner's immigration proceedings has been transferred to the Detroit Immigration Court, and the record is silent as to when Petitioner's final merits hearing is scheduled before that court. It is possible that a determination from the BIA as to whether Petitioner is entitled to bond would come before any final decision regarding removal. Nevertheless, it is unmistakable that "depriving [Petitioner] of his liberty while awaiting a BIA appeal decision certainly equates to hardship. And any delay results in the very harm [Petitioner] is trying to avoid . . . –detention." *See Lopez-Campos*, 2025 WL 2496379, at *5.

In sum, the Court declines to enforce the doctrine of prudential exhaustion against Petitioner. Moreover, even if the Court were to conclude that prudential exhaustion is warranted,

6

the Court concludes in the alternative that waiver of exhaustion is appropriate. Accordingly, the Court will proceed to address the merits of Petitioner's § 2241 petition.

### III. Merits Discussion

#### A. Statutory Basis for Petitioner's Detention

Petitioner contends that Respondents have violated the INA by concluding that Petitioner is detained pursuant to the mandatory detention provisions set forth in 8 U.S.C. § 1225(b)(2). (§ 2241 Pet., ECF No. 1, PageID.16.) According to Petitioner, noncitizens who "previously entered the country and have been residing in the United States prior to being apprehended and placed in removal proceedings" are detained pursuant to 8 U.S.C. § 1226(a) "and are eligible for release on bond, unless they are subject to § 1225(b)(1), § 1226(c), or § 1231." (*Id.*, PageID.15–16.) Respondents, however, contend that Petitioner "unambiguously meets every element for detention under § 1225(b)(2)," and that "even if the text of § 1225(b)(2) were ambiguous, its structure and history support the agency's interpretation of the statute." (ECF No. 4, PageID.28.)

In order to address the parties' arguments, this Court must engage in principles of statutory interpretation. "A statute should be construed so that effect is given to all its provisions." *Corey v. United States*, 556 U.S. 303, 314 (2009); *see also Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022 (noting how courts "must give effect to the clear meaning of statutes as written"). When engaging in statutory interpretation, the Court's "inquiry 'begins with the statutory text, and ends there as well if the text is unambiguous.'" *See In re Vill. Apothecary, Inc.*, 45 F.4th 940, 947 (6th Cir. 2022) (quoting *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 346 (6th Cir. 2016)). But, "the 'meaning—or ambiguity—of certain words or phrases may only become evident when placed in context.'" *Id.* (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159 (2000)). "The words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012). This Court must also

7

"use every tool at [its] disposal to determine the best reading of the statute." *Raimondo*, 603 U.S. at 400.

With these principles in mind, the Court begins with the language of the statutes in question. Section 1225(b)(2)(a) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." *See* 8 U.S.C. § 1225(b)(2)(a). An "applicant for admission" is defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States." *See id.* § 1225(a)(1). The INA further defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *See* 8 U.S.C. § 1101(a)(13). Section 1226(a), on the other hand, states that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." *See* 8 U.S.C. § 1226(a).

Respondents argue that Petitioner "unambiguously is an 'applicant for admission' under the plain text of [§ 1225] because he is a noncitizen, he was not admitted to the United States, and he was present in the United States when he was apprehended." (ECF No. 4, PageID.29.) Respondents assert further that because "Petitioner has not agreed immediately to depart, logically he must be seeking to remain—a legal action that requires 'admission,' i.e., a lawful entry." (*Id.*, PageID.30.) Respondents also argue that "applicant for admission" presumptively "characterizes all unlawfully present noncitizens as applying for admission until they are either removed or successfully obtain a lawful entry, regardless of their subjective intent." (*Id.*) Essentially, Respondents assert that § 1225(b)(2)(A) mandates the detention of any noncitizen who is "present" in the United States and who has not been lawfully admitted. However, for the reasons discussed

8

below, this Court agrees with the numerous other courts in the country that have concluded that Respondents' interpretation of the statute is simply much too broad.

As set forth *supra*, § 1225(b)(2)(A) provides for the detention of an "alien seeking admission" after an "examining immigration officer" determines that the alien "is not clearly and beyond a doubt entitled to be admitted." In this Court's opinion, the phrase "seeking admission" refers to an action that is currently occurring and that would occur at the United States' border when the alien is being inspected. Here, under the facts and circumstances of Petitioner's case, an "examining immigration officer" did not make a determination as to whether Petitioner was not clearly and beyond a doubt entitled to be admitted when Petitioner came into the United States on September 4, 2023. Instead, Petitioner and his family were encountered by the USBP 16 days later, on September 20, 2023. (McClure Decl. ¶ 4, ECF No. 4-1, PageID.46.) At that time, Petitioner was released on his own recognizance. (*Id.*) Notably, Petitioner was not crossing the border when he was arrested and detained. Instead, Petitioner represents, he was detained on September 14, 2025, while playing basketball outside. (§ 2241 Pet., ECF No. 1, PageID.2.)

Granted, Petitioner is now seeking admission to the United States via a petition for asylum. (*Id.*) There is nothing in the record before the Court, however, suggesting the date on which Petitioner initiated his petition for asylum. Thus, there is nothing in the record currently before the Court to suggest that Petitioner ever attempted to gain lawful status in the United States before being apprehended and detained.

In light of the foregoing, the Court concludes that § 1225(b)(2)(A) applies to aliens undergoing inspection, which generally occurs at the United States' border, when they are seeking lawful entry into the United States. Thus, because the record clearly shows that Petitioner resided in the United States for almost two years before being arrested and detained, there is simply no

9

logical reason to interpret § 1225(b)(2)(A) as applying to Petitioner given that Petitioner was not actively "seeking admission" during those 2 years.

Unlike § 1225(b)(2)(A), section 1226(a) provides that, when dealing with "apprehension and detention of aliens," the Attorney General may issue a warrant and "arrest[] or detain[] [an alien] pending a decision on whether the alien is to be removed from the United States." *See* 8 U.S.C. § 1226(a). Here, § 1226(a) clearly applies to Petitioner's situation—Petitioner was apprehended while playing basketball, arrested, and detained. Petitioner has been detained pending removal proceedings before an immigration judge; thus, under § 1226(a), the Attorney General has discretion to either detain or release Petitioner on bond or conditional parole. This language clearly allows the alien to request a bond redetermination by an immigration judge.

This Court's conclusion is consistent with the Supreme Court's clarification that sections 1225 and 1226 apply in different circumstances. *See Jennings v. Rodriguez*, 583 U.S. 281 (2018). As the *Jennings* Court noted, § 1225 is part of the "process of decision [that] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." *Jennings*, 583 U.S. at 287. Section 1226, however, applies to the process of "arresting and detaining" aliens who are already living within the United States but are still subject to removal. *See id.* at 287. Thus, in *Jennings*, the Supreme Court differentiated between noncitizens arriving to the United States, who are, therefore, governed by § 1225, and noncitizens already present in the country and are, accordingly, governed by § 1226.

The record before the Court also supports this conclusion. The arrest warrant issued for Petitioner clearly states that Petitioner was arrested and detained pursuant to INA § 236. (ECF No. 5-1, PageID.72.) The warrant was clearly addressed to "[a]ny immigration officer authorized pursuant to sections 236 and 287 of the [INA] and part 287 of title 8, Code of Federal Regulations,

10

to serve warrants of arrest for immigration violations." (*Id.*) INA § 236 is codified at 8 U.S.C. § 1226. It was not until Petitioner filed the instant § 2241 petition that the record contains any suggestion that the Government claims Petitioner's detention is pursuant to § 1225(b)(2)(A). Quite simply, the record does not support that claim, given the clear indication that Petitioner was not detained under § 1225(b)(2)(A).

Moreover, the Court cannot ignore Congressional intent when conducting statutory analysis. Recently, Congress passed the Laken Riley Act, which amended § 1226 to prescribe a subset of noncitizens who are exempt from the discretionary bond analysis. Specifically, the Act added a subsection that explicitly mandates detention for those noncitizens who are inadmissible under §§ 1182(a)(6)(A), 1182(a)(6)(C), and 1182(a)(7), **and** who have been arrested for, charged with, or convicted of certain crimes. *See* 8 U.S.C. § 1226(c)(1)(E). Quite simply, were the Court to agree with Respondents' interpretation of §§ 1225 and 1226, § 1226(c)(1)(E) would be rendered entirely superfluous.

The Court concludes that § 1226(a), and not § 1225(b)(2)(A), governs noncitizens, such as Petitioner, who have resided in the United States and were already within the United States when apprehended and arrested. The reading of the pertinent statutes clearly supports this conclusion. Moreover, this Court is far from the first federal district court to reach this conclusion. *See, e.g.*, *Lopez-Campos*, 2025 WL 2496379, at *8; *see also Rodriguez v. Bostock*, 779 F. Supp. 3d at 1256–61; *Singh v. Lewis*, No. 4:25-cv-96-RGJ, 2025 WL 2699219, at *3–5 (W.D. Ky. Sept. 22, 2025); *Lopez-Arevelo v. Ripa*, No. EP-25-CV-337-KC, 2025 WL 2691828, at *7–12 (W.D. Tex. Sept. 22, 2025); *Campos Leon v. Forestal*, 1:25-cv-1774-SEB-MJD, 2025 WL 2694763, at *2–5 (S.D. Ind. Sept. 22, 2025); *Hasan v. Crawford*, No. 1:25-cv-1408 (LMB/IDD), 2025 WL 2682255, at *5–9 (E.D. Va. Sept. 19, 2025); *Garcia Cortes v. Noem*, No. 1:25-cv-2677-CNS, 2025 WL 2652880, at

\*2–3 (D. Colo. Sept. 16, 2025); *Kostak v. Trump et al.*, No. 3:25-cv-01093-JE-KDM, 2025 WL 2472136, at \*2–4 (W.D. La. Aug. 27, 2025); *Romero v. Hyde*, No. 1:25-cv-11631-BEM, 2025 WL 2403827, at \*8–13 (D. Mass. Aug. 19, 2025); *Maldonado v. Olson*, No. 0:25-cv-03142-SRN-SGE, 2025 WL 2374411, at \*9–16 (D. Minn. Aug. 15, 2025); *dos Santos v. Noem*, No. 1:25-cv-12052-JEK, 2025 WL 2370988, at \*6–9 (D. Mass. Aug. 14, 2025); *Lopez Benitez v. Francis*, No. 1:25-cv-05937-DEH, 2025 WL 2371588, at \*3–9 (S.D.N.Y. Aug. 13, 2025); *Rosado v. Figueroa*, No. 2:25-cv-02157-DLR, 2025 WL 2337099, at \*6–11 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted*, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Gomes v. Hyde*, No. 1:25-cv-11571-JEK, 2025 WL 1869299, at \*6–8 (D. Mass. July 7, 2025).[1]

Rather, Petitioner's case is governed by § 1226(a), and he is subject to the discretionary bond determination set forth therein.

### B.   Fifth Amendment Due Process Considerations

Petitioner also argues that his detention violates the Fifth Amendment's Due Process Clause. (§ 2241 Pet., ECF No. 1, PageID.14.) Petitioner avers that there is "no credible argument" that he "cannot be safely released back to his community and family." (*Id.*) He contends that he "should have the opportunity to have a bond hearing before an Immigration Judge," and that "[b]y issuing its decision in *Matter of Yajure Hurtado*, the BIA has taken nearly all bond authority away from Immigration Judges." (*Id.*, PageID.15.) Respondents counter Petitioner's arguments by stating that Petitioner has received due process because he "received notice of the charges against

---

[1] This is just a representative sampling of the various federal district courts that have reached the same conclusion as this Court. In his reply brief as well as his motion for leave to file supplemental authority, Petitioner, through counsel, has provided citations to several other federal district courts that have concluded the same. (ECF No. 5, PageID.65–66; ECF No. 6, PageID.73–74.)

him, has access to counsel, is schedule[d] to appear in immigration court, and has been detained by ICE for only two weeks." (ECF No. 4, PageID.40.)

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The Fifth Amendment's Due Process Clause extends to all persons, regardless of status. *See A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025). Thus, noncitizens such as Petitioner are entitled to its protections. *See id.*; *see also Chavez-Acosta v. Garland*, No. 22-3045, 2023 WL 236837, at *4 (6th Cir. Jan. 18. 2023).

Respondents essentially contend that Petitioner is due no further process at this time because he is "scheduled for a bond hearing and a hearing in immigration court in less than two weeks." (ECF No. 4, PageID.40.) Respondents' assertion, however, is contradicted by their own supporting evidence—as noted above, Petitioner has not requested a bond redetermination hearing, and there is nothing in the record before the Court to suggest that a bond hearing has been scheduled. (McClure Decl. ¶ 11, PageID.4-1, PageID.48.) Respondents claim further that "statutory provisions denying bond during administrative removal proceedings do not violate the [D]ue [P]rocess [C]lause." (ECF No. 4, PageID.40.)

Granted, if this Court agreed with Respondents that Petitioner's detention is governed by § 1225(b)(2)(A), the Government's due process argument might hold true. However, as set forth *supra*, this Court does not agree with Respondents that Petitioner's detention is governed by § 1225(b)(2)(A). Instead, Petitioner's detention is governed by § 1226(a). Section 1226(a) clearly sets forth a discretionary framework for detention or release of an alien subject to that provision. The statute explicitly allows the Attorney General to continue to detain the arrested alien, or release the alien either "bond of at least $1,500 with security approved by, and containing conditions

prescribed by, the Attorney General," or "conditional parole." *See* 8 U.S.C. § 1226(a)(1), (2). This discretionary framework "requires a bond hearing to make an individualized custody determination." *See Lopez-Campos*, 2025 WL 2496379, at *9.

The Sixth Circuit has held that the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), regarding the adequacy of process, applies in the context of immigration detention. *See United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020). Thus, under *Mathews*, this Court must consider the following three factors: "(1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures entail." *See Lopez-Campos*, 2025 WL 2496379, at *9 (citing *Mathews*, 424 U.S. at 335).

The first *Mathews* factor clearly weighs in favor of Petitioner. There is no dispute that Petitioner has a significant private interest in avoiding detention, as one of the "most elemental of liberty interests" is to be free from detention. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). The Court may also consider Petitioner's conditions of confinement, i.e., "whether a detainee is held in conditions indistinguishable from criminal incarceration." *See Günaydin v. Trump*, No. 25-CV-01151 (JMB/DLM), 2025 WL 1459154 at *7 (D. Minn. May 21, 2025) (citing *Hernandez-Lara v. Lyons*, 10 F.4th 19, 27 (1st Cir. 2021); *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020)). Petitioner, through counsel, represents that he is married to another Venezuelan citizen and that they have two children. (§ 2241 Pet., ECF No. 1, PageID.4.) Petitioner and his family reside in Northfield, Illinois, and Petitioner is "the primary financial support for the family." (*Id.*) Here, Petitioner is now detained at a processing center that is in a different state than his home and family, and there can be no doubt that he is "experiencing [many of] the deprivations of incarceration, including loss of contact with friends and family, loss of income earning, . . . lack

of privacy, and, most fundamentally, the lack of freedom of movement." *See Günaydin*, 2025 WL 1459154 at *7.

Likewise, the second *Mathews* factor weighs in Petitioner's favor, Clearly, there is a high risk of erroneously depriving Petitioner of his freedom should he not receive an individualized bond hearing at which the immigration judge can assess whether Petitioner poses a flight risk and/or a danger to the community. Moreover, the Court finds it notable that when Petitioner encountered USBP on September 20, 2023, he was released on his own recognizance, but that he now finds himself deprived of his freedom.

Finally, under the third *Mathews* factor, the Court recognizes that the Government "does, indeed, have a legitimate interest in ensuring noncitizens' appearance at removal proceedings and preventing harms to the community." *See Sampiao v. Hyde*, No. 1:25-cv-11981-JEK, 2025 WL 2607924, at *12 (D. Mass. Sept. 9, 2025). However, on the record before the Court, Respondents have not shown that it outweighs the first and second *Mathews* factors.

In sum, the Court's balancing of the *Mathews* factors weighs in Petitioner's favor. Accordingly, the Court concludes that Petitioner's current detention under the mandatory detention framework set forth in § 1225(b)(2)(A) violates Petitioner's Fifth Amendment due process rights.

### IV.     Prohibition on Transfer

Petitioner requests that the Court order Respondents "not to transfer Petitioner out of the Western District of Michigan during the pendency of these proceedings to preserve jurisdiction and access to counsel." (§ 2241 Pet., ECF No. 1, PageID.16.) Respondents counter that such a restriction "is unnecessary . . . because the Court will maintain jurisdiction regardless of where DHS holds [Petitioner] in custody." (ECF No. 4, PageID.41.)

"The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody." *Braden v. 30th Jud. Circuit Ct. of Ky.*, 410 U.S. 494–95 (1973). Thus,

> [r]ead literally, the language of [§] 2241(a) requires nothing more than that the court issuing the writ have jurisdiction over the custodian. So long as the custodian can be reached by service of process, the court can issue a writ 'within its jurisdiction' requiring that the prisoner be brought before the court for a hearing on his claim, or requiring that he be released outright from custody, even if the prisoner himself is confined outside the court's territorial jurisdiction.

*Id.* at 495.

The Sixth Circuit has "concluded that a detained alien generally must designate his immediate custodian—the INS District Director for the district where he is being detained—as the respondent to his habeas corpus petition." *Roman v. Ashcroft*, 340 F.3d 314, 322 (6th Cir. 2003). Here, Petitioner has named Robert Lynch, the ICE Field Office Director, and Kristi Noem, Secretary of the Department of Homeland Security, as Respondents. Respondents request that Secretary Noem be dismissed because "only the ICE Field Office Director is a proper respondent in this case." (ECF No. 4, PageID.42.)

In *Roman*, the Sixth Circuit stated that while it "conclude[d] that the immediate custodian rule generally applies to alien habeas corpus petitioners, [there is] the possibility of exceptions to this rule." *Roman*, 340 F.3d at 322. The *Roman* court went on to note:

> Some courts are also willing to make an exception to the immediate custodian rule in other extraordinary circumstances. For example, courts have noted the INS's ability, as a practical matter, to deny aliens any meaningful opportunity to seek habeas corpus relief simply by transferring aliens to another district any time they filed a habeas corpus petition. *Chavez–Rivas,* 194 F. Supp. 2d at 374. Aliens remaining in detention for extended periods are often transferred several times during their detention. *See Lee v. Ashcroft,* 216 F. Supp. 2d 51, 55 (E.D.N.Y.2002) ("[T]he location of custody, and the identity of the day-to-day custodian, frequently change when detainees are transferred among INS facilities, all of which are under the control of the Attorney General."); Rosenbloom, *supra,* at 549. In light of these transfers, one court reasoned that an alien may properly name a respondent other than his immediate custodian because a petition naming a higher level official, such

>as the Attorney General, could be adjudicated without interruption in the event of a transfer. *Arias–Agramonte,* 2000 WL 1617999, at *8 (explaining that a petition naming only one's immediate custodian would be dismissed when the alien was transferred to another local district).

*Id.* at 325–26. Thus, the Sixth Circuit concluded, "an exception might be appropriate if the INS were to exercise its transfer power in a clear effort to evade an alien's habeas petitions." *Id.* at 326.

In light of the foregoing, the Court declines to enter an order directing Respondents not to transfer Petitioner out of the Western District of Michigan during the pendency of these proceedings. However, in order to ensure that Respondents maintain authority to enforce this Court's grant of habeas relief and directive that Petitioner receive a bond hearing or, alternatively, be released in the event that Petitioner is transferred out of the Western District of Michigan, the Court will not dismiss Secretary Noem as a Respondent to these proceedings.

**V.     Summary**

For the reasons set forth above, the Court disagrees with Respondents that Petitioner's detention is governed by § 1225(b)(2)(A) and, therefore, that Petitioner is subject to mandatory detention. Instead, the Court concludes that Petitioner's detention is governed by § 1226(a) and, therefore, that Petitioner is entitled to a discretionary and individualized bond determination as set forth in that statute. Likewise, the Court finds that because Petitioner's detention is governed by § 1226(a), his current detention under § 1225(b)(2)(A) violates Petitioner's Fifth Amendment due process rights.

While Petitioner is entitled to a bond hearing, the Court notes that the immigration judge is in the better position to evaluate whether Petitioner poses a flight risk and a danger to the community. Accordingly, the Court leaves to the immigration judge's sound discretion a determination on that issue.

**Conclusion**

The Court will grant Petitioner's motion for leave to file supplemental authority. (ECF No. 6.) Moreover, for the reasons discussed above, the Court will enter an order and judgment granting Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) The Court will order Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within five business days of the date of this Court's opinion and accompanying order and judgment or, in the alternative, immediately release Petitioner from custody. The Court will also order Respondents to file a status report within six business days of the date of this Court's opinion and accompanying order and judgment to certify compliance with this opinion. The status report shall include if and when the bond hearing occurred, if bond was granted or denied, and if bond was denied, the reasons for the denial.

Dated:  October 24, 2025                           /s/ Paul L. Maloney
                                                                                          Paul L. Maloney
                                                                                          United States District Judge